**Laura ENGLISH, Plaintiff–Appellee,**

v.

**COUNTY OF ORANGE, Defendant,**

**Carol Tunney, Director of Nursing, Orange County Residential Health Care Facility, sued in her individual capacity, Defendant–Appellant.**

No. 02–9413.

United States Court of Appeals, Second Circuit.

July 25, 2003.

Stephen Bergstein, Thornton, Bergstein & Ullrich, LLP, Chester, NY, for Plaintiff–Appellee.

Patrick Burke, Burke, Miele & Golden, LLP, Goshen, NY, for Defendant–Appellant.

Present: VAN GRAAFEILAND, CALABRESI and WESLEY, Circuit Judges.

**SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Carol Tunney, Director of Nursing at the Residential Health Care Facility (RHC) of Orange County, New York, appeals from an order of the United States District Court for the Southern District of New York (Fox, *M.J.*), denying her motion

for summary judgment on the issue of qualified immunity.

The plaintiff, Laura English, a Principal Clerk at RHC, brought a § 1983 claim alleging that Tunney violated her First Amendment rights by terminating her employment in retaliation for English's speaking on a matter of public concern. Identifying disputed issues of material fact regarding the causal connection between plaintiff's speech and her termination, the district court denied defendant's motion for summary judgment. The defendant also argued that she was entitled to qualified immunity because the speech for which the plaintiff allegedly was terminated did not address a matter of public concern. The court ruled that, viewing the facts in the light most favorable to the plaintiff, the plaintiff's speech addressed, at least in part, a matter of public concern. Finding that the right to engage in what some courts have called "mixed speech"— speech that combines matter of personal and public concern—is clearly established by Supreme Court and Second Circuit precedents, the court denied qualified immunity.

We have jurisdiction over interlocutory appeals of a district court's denial of qualified immunity when the defendant "contends that he is entitled to qualified immunity even under plaintiff's version of the facts." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003). We therefore construe the facts in the light most favorable to the plaintiff when reviewing appeals of qualified immunity determinations.

During her employment at RHC as a Principal Clerk, the plaintiff's duties included staffing nurses and certified nursing assistants for the 3:00 p.m.–11:00 p.m. shift. [A. 6–7] In the approximately six months she worked at RHC, English was frequently reprimanded for overstaffing her shift. At her deposition, she explained that she believed overstaffing was required because staff members would often fail to appear for work with very little notice. Her supervisors contend that English's staffing problems resulted from inappropriate "deal-making" with other employees. English alleges that she was motivated by concern about the quality of care patients received when the facility was understaffed.

In her deposition, English described a conversation she had with her supervisor, Carla Simmon, in December 2000, after Simmons returned from a meeting with Tunney where Tunney told Simmons that the overstaffing problem at RHC required immediate resolution. English recalled her response to Simmons as follows:

> [I]n my emotion of defending what I did, I said, I don't even know if these are the exact words, I said something like it appears to me that-and I really think I was talking about Joe Rampe [the County Executive] and the legislators, I don't even remember exactly how I termed it, but I said something like it appears to me we're more concerned here with budget needs than we are with resident care and, you know, we're worried about numbers on a piece of paper, but let a resident die, fall and die and then we'll be looking to suspend somebody from staffing and somebody from the unit, because, you know, this one wasn't-it was a-it wasn't an accusation, it was this is what's going to happen, let's keep the budget down, but point the finger at you, so it was like burning the candle at both ends. It was a no-win situation, and that's what I was expressing to her in an emotion.

In January 2001, English was fired from RHC at a meeting attended by Simmons, Tunney, and another RHC employee. Both parties agree that Tunney told En-

glish that her staffing problems—in particular, the alleged deal–making—were the reason for her termination. English alleges that Tunney also said to her, "I can't have someone working for me who has concerns about resident care."

Simmons acknowledged in her deposition that English had alluded to concerns about resident care in previous conversations, but said that English would mention the issue of inadequate staffing only when she was being reprimanded for scheduling problems. Defendant therefore claims that English's speech to Simmons did not address a matter of public concern. Rather, defendant contends, plaintiff spoke only on a matter of personal interest and thus is not entitled to protection.

Viewing the facts in the light most favorable to the plaintiff requires us to assume that English's speech was, as she contends, motivated by concerns about resident care and not merely by a desire to obscure her allegedly poor job performance or to counteract her supervisors' reprimands. Under our clearly established precedents, this alleged public-regarding motive, *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir.1999), as well as the public interest-related component of the content of plaintiff's speech, *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir.2000), unambiguously place her statements in the "public concern" category. Given the rules for appealing interlocutory orders that deny qualified immunity, we cannot say that the defendant was entitled to summary judgment.

We have considered all of the defendant's arguments on the qualified immunity issue, and find them to be without merit. Accordingly, we AFFIRM.